IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DANIELLE FERGUSON, )
 )
    Plaintiff, )
 ) No. 3:12-cv-1200
v. ) Chief Judge Haynes
 )
WILLIAMSON COUNTY DEPARTMENT )
OF EMERGENCY COMMUNICATIONS, )
 )
    Defendant. )

# MEMORANDUM

Plaintiff, Danielle Ferguson, filed this action under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 et seq., and the Tennessee Human Rights Act ("THRA"), Tenn. Code §§ 4-21-101 et seq. against the Defendant, Williamson County Department of Emergency Communications ("Williamson County"), her employer. Plaintiff asserts claims for violation of the FMLA and pregnancy discrimination in violation of the THRA.

Before the Court is Defendant's motion for summary judgment (Docket Entry No. 13), contending, in sum, that Plaintiff's FMLA claim is not ripe for adjudication, and even if it were, Plaintiff has not stated a FMLA claim, and the Court should decline to exercise supplemental jurisdiction over Plaintiff's THRA claim. As to the merits of the THRA claim, Defendant argues that Plaintif's proof fails to make a prima facie showing of discrimination. In response, Plaintiff contends that she has stated a viable FMLA claim, and that the Court should exercise supplemental jurisdiction because her THRA claims involve the same nucleus of operative facts as her FMLA claim. As to the merits of her THRA claim, Plaintiff asserts that her proof is sufficient for a prima facie showing of discrimination. (Docket Entry No. 20).

For the reasons set forth below, the Court concludes that Defendant's motion for summary judgment should be denied because Plaintiff has stated an FMLA claim and made a prima facie

showing of discrimination under the THRA. Further matertial factual disputes exists on whether Plaintiff was able to accept the new shift as of October 5, 2012, or whether she needed to wait until January 2013 to do so.

## A. Review of the Record[1]

Plaintiff, Danielle Ferguson, was at all times relevant to this case, a dispatcher for the Defendant, Williamson County Department of Emergency Communications. (Docket Entry No. 19, Plaintiff's Response to Defendants' Statement of Undisputed Facts, at ¶ 1). In August 2012, Plaintiff's shift was Fridays, Saturdays, and Sundays from 5:00 p.m. to 6:00 a.m. Id. at ¶ 3.

During late August 2012, Plaintiff's physician restricted her work hours for the duration of her pregnancy such that she could no longer work 7 or 8 hours of her 13 hour shift. Id. at ¶ 4-5. Plaintiff communicated those restrictions to Defendant. Id. There was no available regular day shift to which Plaintiff could have been reassigned. Id. at ¶ 6. During the weekend of August 25, 2012, Plaintiff was initially taken off the schedule, but was eventually scheduled for a 10-hour shift on Saturday, a 6-hour shift on Sunday, and at 7-hour class on Monday, for which she was compensated. Id. at ¶ 8.

As a longer-term partial solution, Plaintiff agreed to work from 5:00 p.m. to 11:00 p.m. of her regular shift. Id. at ¶¶ 9-10. As an employee who was compensated hourly, Plaintiff also sought additional hours to maintain her existing wages. Id. at ¶ 10; Docket Entry No. 25, Defendant's Response to Plaintiff's Statement of Additional Material Facts, at ¶ 10. While Plaintiff was under her

---

[1] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247–52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). With the denial of Defendant's motion for summary judgment, the Court declines to make findings of fact.

physician's restrictions for complications due to her pregnancy, her hourly rate remained the same, and she received the same employment benefits as she had prior to her pregnancy. (Docket Entry No. 19, Plaintiff's Response to Defendants' Statement of Undisputed Facts, at ¶ 11).

Some of Plaintiff's hours from her regular shift were within the scope of her restrictions. Id. at ¶ 12. Phyllis Dodd, Plaintiff's scheduling supervisor, told Plaintiff that if any other employee was absent and additional help was needed on the shift, Plaintiff would be offered those shifts first. Id. Plaintiff was offered shifts when other employees were absent and accepted some and declined others. Id. at ¶ 13-14. On October 5, 2012, Plaintiff was offered a shift with all hours within her restrictions. Id. at ¶ 17. The parties dispute whether Plaintiff was able to accept the new shift as of October 5, 2012, or whether she needed to wait until January 2013. Id. at ¶¶ 17-18.

On December 31, 2012, Plaintiff began working the new shift, Mondays, Tuesdays, and Wednesdays from 11:00 a.m. to 9:00 p.m., and Sundays from 7:00 a.m. to 5:00 p.m.. Id. at ¶ 19. Between August 2012 and December 2012, Plaintiff was under restrictions, but was not yet reassigned to a new shift. Id. at ¶ 16. Plaintiff worked 176.5 hours less than she would have been scheduled absent her medical restrictions. Id.

According to Plaintiff, a number of other employees were permitted to change their schedules for a variety of reasons, including child care (Id. at ¶¶ 25, 27), school schedules (Id. at ¶¶ 26, 30), changes in personal lives (Id. at ¶ 26), personal preference (Id. at ¶ 29), among others.

### B. Conclusions of Law

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the

opposing party was on notice that [he] had to come forward with all of [his] evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247–48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex, 477 U.S. at 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355–57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir.

1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties, as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.... [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n.4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden–Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the United States Court of Appeals for the Sixth Circuit warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and] . . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the

> record taken as a whole could not lead a rational trier of fact to find"
> for the respondent, the motion should be granted. The trial court has
> at least some discretion to determine whether the respondent's claim
> is "implausible."

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.
>
> ....
>
> Progressing to the specific issue in this case, we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-"whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

> In ruling on [a] motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute....'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

> 1. Complex cases are not necessarily inappropriate for summary judgment.
>
> 2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.
>
> 3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.
>
> 4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> 5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."
>
> 6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.
>
> 7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.
>
> 8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."
>
> 9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

> 10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479–80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

### 1. FMLA

For her FMLA claim, Plaintiff can proceed under two theories: interference and retaliation. Hoge v. Honda of Am. Mfg. Inc., 384 F.3d 238, 244 (6th Cir. 2004). The interference theory requires the FMLA plaintiff to prove that: (1) she is an eligible employee for purposes of the Act; (2) the defendant is an employer subject to the FMLA's requirements; (3) the employee was satisfied FMLA leave criteria; (4) the employee provided adequate notice of her intent to invoke FMLA leave benefits; and (5) the defendant denied the employee FMLA benefits to which the employee was entitled. Cavin v. Honda of Am. Mfg., Inc., 346 F.3d 713, 719 (6th Cir. 2003). Under the fifth element, Plaintiff can alternatively prove that: "the employer has 'somehow used the leave against her and in an unlawful manner, as provided in either the statute or regulations.'" Wysong v. Dow Chemical Co., 503 F.3d 441, 447 (6th Cir. 2007) (citing Bradley v. Mary Rutan Hosp., 322 F. Supp. 2d 926, 940 (S.D. Ohio

2004). A retaliation claim requires that a plaintiff who engages in protected FMLA activity did so with her employer's knowledge, and then was subjected to an adverse employment action that has a causal connection to the invocation of the FMLA leave. Killian v. Yorozu Auto. Tenn., Inc., 454 F.3d 549, 556 (6th Cir. 2006). Plaintiff asserts claims under the interference theory. (Docket Entry No. 1, Complaint, at 3). The material factual dispute amongst the parties arises concerns the fifth prong of Plaintiff's FMLA claim.

The Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. is designed, in part, to counterbalance inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods. Under the FMLA, covered employers must make leave available for employees who present eligible medical reasons. "[A]n eligible employee shall be entitled to a total of 12 workweeks of leave during any 12 month period for . . . a serious health condition that makes the employee unable to perform the functions of the position of such an employee." 29 U.S.C. § 2612(a)(1)(D) (2005). The FMLA defines "serious health condition" as an "illness, injury, impairment or physical or mental condition that involves . . . continuing treatment by a health care provider. 29 U.S.C. § 2612(11)(B) (2005). "Any period of incapacity due to pregnancy" is included in "continuing treatment by a health care provider." 29 C.F.R. § 825.102 (2013).

The FMLA prohibits an employer from interfering with an employee's rights under the Act. Under 29 U.S.C. § 2615(a)(1), an employer cannot interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under the FMLA. The relevant inquiry is whether Defendant interfered with Plaintiff's exercise or attempt to exercise her FMLA rights when Plaintiff was forced to take FMLA leave to cover the hours of her shift that she was unable to work because of her pregnancy.

If employees seek intermittent leave, the employer may require the employee to transfer

10

temporarily to an alternative position. 29 C.F.R. § 825.204(a). The employer is permitted to transfer the employee to a part-time job with the same hourly rate of pay and benefits, provided the employee is not required to take more leave than is "medically necessary". 29 C.F.R. § 825.204(c). Courts have held that "medically necessary" in the FMLA means "requiring that an intermittent leave schedule 'best accommodate' the medical needs of the ill or injured employee." Kleinser v. Bay Park Community Hosp., 793 F. Supp. 2d 1039, 1044 (N.D. Ohio 2011) (citing Jadwin v. Cnty. of Kern, 610 F. Supp. 2d 1129, 1169-70 (E.D. Ca. 2009)).

The determination of whether an intermittent leave schedule "best accommodates" the needs of the employee is a question of fact that depends on the medical documentation for the injury's impact on the employee's ability to perform her job functions. See Kleinser, 793 F. Supp. 2d at 1044 (citing 29 C.F.R. § 825.202(b)). The assessment of medical documentation and application of the relevant regulations is a question of fact that cannot be decided on summary judgment. The factual record as set forth by both parties reflects material disputes over the amount of intermittent leave that was "medically necessary" for Plaintiff to take. As such, a material factual dispute exists on whether Williamson County discriminated against Plaintiff in requiring her to take intermittent leave.

### 2. THRA

The THRA was designed to execute the policies embodied in the federal Civil Rights Acts of 1964, 1968, and 1972, including the Pregnancy Discrimination Act of 1978 ("PDA"). Spann v. Abraham, 36 S.W.3d 452, 463 (Tenn. Ct. App. 1999) (citing Tenn. Code Ann. § 4–21–101(a)(1)). As such, "THRA claims are analyzed in the same manner as Title VII claims." Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick & GMC Trucks, Inc., 173 F.3d 988, 993 (6th Cir. 1999) (citing Campbell v. Florida Steel Corp., 919 S.W.2d 26, 31 (Tenn. 1996)). Tennessee courts may look to federal courts construing Title VII when analyzing claims under the THRA. See Weber v. Moses, 938

S.W.2d 387, 390 (Tenn. 1996). Federal precedent does not, however, bind or limit Tennessee courts' ability to give the fullest possible effect to the THRA. See Carr v. United Parcel Serv., 955 S.W.2d 832, 835 (Tenn. 1997).

Under Title VII, a discrimination claim on the basis of pregnancy is evaluated as a sex discrimination claim. Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 658 (6th Cir. 2000). Absent direct evidence, the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 807 (1973), applies. Thus, Plaintiff must first produce sufficient evidence to make a prima facie showing of discrimination. Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 142 (2000). If Plaintiff satisfies this burden, Defendant must produce some evidence of a legitimate, nondiscriminatory reason for Plaintiff's termination. Id. Once defendant makes this showing, Plaintiff must then submit evidence that Defendant's allegedly legitimate reason was a pretext for discrimination. Id. at 143.

To establish a prima facie case of pregnancy discrimination under Title VII, Plaintiff must show: "(1) she was pregnant, (2) she was qualified for her job, (3) she was subjected to an adverse employment decision, and (4) there is a nexus between her pregnancy and the adverse employment decision." Asmo v. Keane, Inc., 471 F.3d 588, 592 (6th Cir. 2006). To avoid summary judgment, Plaintiff must also offer evidence that she was treated differently from nonpregnant persons who were similar in their ability or inability to work. Zhu v. Vanderbilt University, No. 3:06-0460, 2007 WL 2963980, at *12 (M.D. Tenn. Oct. 5, 2007) (citing Ensley–Gaines v. Runyon, 100 F.3d 1220, 1226 (6th Cir. 1996)).

From a review of the record, Plaintiff has presented evidence sufficient for a prima facie showing of pregnancy discrimination. Plaintiff's proof is that the Defendant knew of her pregnancy as of August 2012, that Plaintiff was qualified for her job, that Plaintiff was subjected to adverse

employment decisions, and that a nexus exists between Plaintiff's pregnancy and the adverse employment decision.

Defendant disputes two elements of Plaintiff's prima facie showing, the lack of an adverse employment action and proof of less favorable treatment than other similarly situated non-pregnant employees. (Docket Entry No. 14, Defendant's Memorandum in Support of Motion for Summary Judgment, at 12). Citing Brockton v. Snow, 217 F. App'x 201 (4th Cir. 2007), Defendant argues that giving Plaintiff leave instead of hours is not an adverse employment action. Yet, Sixth Circuit precedent is that an adverse employment action includes a "decrease in wage or salary."

> [A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

Hollins v. Atlantic Co., 188 F.3d 652, 662 (6th Cir. 1999). In this District, placement on unpaid leave status for three days constitutes a materially adverse employment action. See Cherry v. Unipres U.S.A., Inc., No. 3:04CV0036, 2006 WL 288645 (M.D. Tenn. Feb. 6, 2006). As to Brockton, there, the employee was confined to bed rest and requested to work from home, but her employer denied the request, offering instead sick leave. 217 F. App'x at 206. The Fourth Circuit held that a determination affecting that plaintiff's ability to "work where she chooses is not the type of ultimate decision that this court has required for a prima facie case of discrimination." Id. Thus, Brockton is factually inapposite.

Defendant next argues that Plaintiff did not suffer adverse treatment, but Plaintiff cites her loss of 176.5 hours of work, for a total of $2,619.26 in lost wages. (Docket Entry No. 19, Plaintiff's Response to Defendants' Statement of Undisputed Facts, at ¶ 16). Placement on unpaid leave that results in 176.5 hours of lost work is not the equivalent of a plaintiff attempting to "choose where she

13

works." Accordingly, the Court concludes that Defendant's placement of Plaintiff on intermittent leave status qualifies as a materially adverse employment action.

As to the similarly situated comparator requirement, it is undisputed that, when Ferguson returned to work in late August 2012, Defendant placed her on intermittent temporary leave status rather than allowing her to work on a schedule that would accommodate her hours restriction. Three months later, Plaintiff accepted a new schedule consistent with her hours restriction, so any failure to accommodate thereafter became moot. Plaintiff has submitted evidence of similarly situated employees who were treated differently from her. Plaintiff cited a number of non-pregnant employees who had been treated differently from her in a deposition, naming a number of individuals who had been permitted to alter their work schedules either by a few hours or by a number of days, for a variety of reasons. (Docket Entry No. 19, Plaintiff's Response to Defendants' Statement of Undisputed Facts, at ¶¶ 25-29).

The Defendant contends that those accommodations were in substantially different situations than Plaintiff's, and thus the comparators are not similarly situated. (Docket Entry No. 14, Defendant's Memorandum in Support of Motion for Summary Judgment, at 15-18). On summary judgment, the facts must be taken in the light most favorable to the nonmoving party. Thus, the Court concludes that Plaintiff has met her burden of proof that she has been treated differently from non-pregnant employees. Moreover, whether a similarly situated comparator exists is a material fact that, because it is disputed, cannot be decided on summary judgment.

The second element of the McDonnell-Douglas test requires the Defendant to produce a legitimate, nondiscriminatory business reason for decreasing Plaintiff's hours. Neither party has briefed any argument on this element, and as such, Defendant has failed to meet its burden of production.

Accordingly, Defendants' motion for summary judgment (Docket Entry No. 13) should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the 29th day of April, 2014.

_____
WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court